# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **VERNON LEVAL** | * | **CIVIL ACTION NO. 11-0001** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Vernon Leval, born June 20, 1946, filed an application for disability insurance benefits on August 31, 2007, alleging disability as of July 17, 2005, due to a back impairment. From 2001 through 2005, claimant was a state employee and had only Medicare Qualified Government Earnings.  (Tr. 97-98).  He remained insured for disability insurance benefits through December 31, 2005.  (Tr. 17, 19).

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Thomas Windham dated October 3, 2005 to December 17, 2005**.  On October 3, 2005, claimant was seen for a lower back injury after slipping in a hallway eight weeks prior.  (Tr. 207).  He complained of left lower back pain radiating to his calf and ankle.  An MRI showed minimal central and left disc bulges at L4-5.  (Tr. 260).  He had started physical therapy.  (Tr. 207).  His medications included Crestor, blood pressure medicine, and antibiotics for his skin.

On examination, claimant's blood pressure was 130/70.  He had a full range of motion of his neck and shoulders.  He had mild lumbar spasm flattening y of his lordotic curve.  He had a slow, painful gait.

Hips were free and non-tender.  Right straight leg raising was crossed to the left.  Left was positive at 30 degrees with a bowstring sign.  Left ankle jerks were diminished.  Claimant had mild weakness extension of the left toe and ankle.  He had no sensory loss or atrophy.

2

Dr. Windham's assessment was lumbar disc rupture.  He recommended

continued physical therapy, and prescribed a Medrol DosePak and Anaprox DS.

On October 31, 2005, claimant still had left hip and sciatic pain.  (Tr. 208).

He was unable to walk well.  He had a normal gait, and normal range of motion of

his back.  He had moderate pain on left straight leg raising at 50 degrees, and

negative on right.  He had no motor or sensory loss, and downgoing toes.  Dr.

Windham instructed claimant to continue therapy, and prescribed Lorcet.

On December 17, 2005, Dr. Windham noted a that a CT scan showed a very

mild bulge at L4-5.  (Tr. 208).

**(2) Physical Therapy Records from Cornerstone Rehabilitation dated**

**October 11, 2005 to December 6, 2005**.[1]  Claimant was treated for lumbar pain.

(Tr. 177-205).  After two weeks, he reported a significant decrease in pain by

25%.  (Tr. 184-92).  His pain had diminished from constant to occasional and had

decreased from a 7 to a 4 on a 1-10 scale.  (Tr. 185).

**(3) Residual Functional Capacity ("RFC") Assessment dated October**

**24, 2007**.  Dr. Timothy Honigman determined that claimant could lift/carry 20

pounds occasionally and 10 pounds frequently.  (Tr. 304).  He could stand/walk or

---

[1]Physical therapists qualify as "other sources" under 20 C.F.R. § 404.1513(e) which sources may be considered but are entitled to significantly less weight than "acceptable medical sources."  *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

sit about six hours in an eight-hour workday.  He had unlimited push/pull ability.

He had no postural limitations.  (Tr. 305).

**(4) Electrodiagnostic Report from Dr. Daniel J. Trahant dated August**

**17, 2005**.  EMGs and nerve conduction studies of the left lower extremity were

normal.  (Tr. 270-71).

**(5) Report from Dr. Najeeb M. Thomas dated December 12, 2006**.  Dr.

Thomas reported that claimant's myelogram revealed a "very, very small disc

herniation at L4-5 on the left."  (Tr. 299).  He further stated that on myelogram, it

looked like there was "an indentation at the takeoff of the nerve root.  It is very

subtle, however."

**(6) Claimant's Administrative Hearing Testimony**.  At the hearing on

November 6, 2008, claimant was 61 years old.  (Tr. 29).  He testified that he was 5

feet 7 inches tall and weighed 175 pounds.  He stated that he had weighed 150

pounds prior to his injury.

Claimant was a college graduate with a degree in Business Administration.

He had served in the military from 1969 through 1971 as a battalion clerk.  (Tr.

30).  He had last worked as a payroll manager for Delgado Community College.

His past work consisted entirely of payroll jobs.  (Tr. 31).

4

Claimant testified that he had stopped working on July 17, 2005, when he was injured.  (Tr. 30).  He stated that he had a constant grabbing, pinching sensation in his left hip extending down to his left leg to the ankle.  (Tr. 32).  He reported that when his pain worsened, he had to lie down on an ice pack for an hour or two.  He said that the pain made him unable to concentrate.  (Tr. 33).

Claimant testified that he had had injections, but the pain had returned.  (Tr. 34).  He reported that he was offered surgery, but the doctor told him that surgery would not help if the injections had not worked.  (Tr. 34-35).

Regarding limitations, claimant testified that he could lift about 20 to 30 pounds.  (Tr. 35).  He stated that he could stand 30 to 45 minutes before having pain.  He said that he could walk for half of a block before feeling pinching sensations in his leg and calf.  (Tr. 36).

Claimant reported that he could sit for 30 to 45 minutes in a lounge chair, but only 30 minutes in a desk chair.  He said he could bend only one-third of what he could do before his injury.  He stated that he could not squat all the way down.  (Tr. 37).

Additionally, claimant said that he had pain when reaching overhead, but did not have problems with his hands.  He also had problems with getting dressed, especially with his shoes, socks, and pants.

As to activities, claimant testified that he had taken care of his mother for over a year before she passed away.  For his daily routine, he prepared breakfast and showered.  (Tr. 38).  He walked the dog two or three times a week.  He did odd jobs around the house and grocery shopped once or twice a week.

Claimant also read, listened to music, and watched TV.  (Tr. 39).  Additionally, he mowed with a riding lawnmower, and drove sometimes.  (Tr. 39-40).

Regarding medications, claimant testified the he tried not to take pain killers and muscle relaxers because they did not really help much.  (Tr. 40).  He said that he preferred to take Aleve or aspirin because they did not make him drowsy.

**(7) Administrative Hearing Testimony of Wendy P. Klamm, Vocational Expert ("VE")**.  Ms. Klamm classified claimant's past work as a payroll manager as sedentary and skilled.  (Tr. 41).  The ALJ posed a hypothetical in which he asked the VE to assume a claimant who was 62 years old with 16 years of education, and who had an exertional capacity to perform sedentary work with the limitations of alternating sitting, standing, or walking in 30 minutes.  (Tr. 42).  In response, Ms. Klamm testified that he could perform his past work.

When claimant's attorney modified the hypothetical to add that claimant needed to have an extended 15 to 30 minute break where he could lie down after

sitting for half an hour, the VE responded that he would not be able to perform his

past work or any other work.  (Tr. 43).  Claimant's attorney also asked whether he

would be able to perform his work if he had drowsiness from his medications.  (Tr.

44).  In response, Ms. Klamm testified that he could probably get a job, but would

lose it if he was not able to maintain attention and the quality of his work was

affected.  (Tr. 44).  When the attorney asked whether claimant could sustain

employment if he had to miss work two or three days a month because of pain, the

VE confirmed that he could not.

   **(8) The ALJ's Findings are Entitled to Deference**.  Claimant argues that:

(1) the Commissioner failed to apply the proper legal standard; (2) the

Commissioner failed to consider all relevant evidence; (3) the Commissioner

failed to comply with SSR 96-8p when assessing his RFC; (4) the Commissioner

failed to properly evaluate his credibility, and (5) the Commissioner's Step 4

denial relies on ambiguous vocational evidence.

As the first error, claimant argues that the Commissioner improperly failed

to consider all medical evidence after his date last insured.  (Tr. 20).

> An individual is entitled to the establishment of a period of disability
> and to disability insurance benefits in any month only if he or she
> enjoys fully insured status as defined in Section 216(i)(3) and Section
> 223(c), and has had not less than 20 quarters of coverage during the
> 40-quarter period ending with the quarter in which disability occurs.

7

*Oldham v. Schweiker*, 660 F.2d 1078, 1080 (5ᵗʰ Cir. 1981) (*citing* 42 U.S.C. §

416(i)(3); 42 U.S.C. s 423(c)).  Thus, a claimant is eligible for benefits only if the

onset of the qualifying medical impairment began on or before the date the

claimant was last insured.  *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5ᵗʰ Cir. 1990).

Claimants bear the burden of establishing a disabling condition before the

expiration of their insured status.  *Id*. (*citing Milam v. Bowen*, 782 F.2d 1284 (5th

Cir.1986)).  Factors relevant to the determination of the date of disability include

the individual's declaration of when his disability began, his work history, and

available medical history.  *Id*. (*citing* Soc.Sec.R. 83–20).

     Claimant cites *Ivy* for the proposition that "[s]ubsequent medical evidence is

relevant . . . because it may bear upon the severity of the claimant's condition

before the expiration of his or her insured status."  *Id*. at 1049.  However, *Ivy* is

distinguishable because it involved a situation in which claimant's medical records

were destroyed and had to be reconstructed.  That is not the case here.

     Additionally, claimant relies on SSR 83-20, which provides that, in some

cases, non-contemporaneous medical records are relevant to the determination of

whether onset occurred on the date alleged by the claimant.  However, that

regulation specifically applies to records (possibly up to 12 months) *immediately*

*prior* to the date of filing."  (emphasis added).   This rule does not pertain to

records subsequent to the date last insured. *See Torres v. Shalala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995); *Dominguez v. Astrue*, 286 Fed.Appx. 182, 185 (5th Cir. 2008) (evidence showing deterioration of claimant's condition after the expiration of claimant's insured status is not relevant to the Commissioner's disability analysis).[2]  Therefore, the proper time frame for the Commissioner's consideration of claimant's disability claim was from July 17, 2005 (the date of alleged onset of disability) to December 31, 2005.

Additionally, SSR 83-20 only applies after claimant establishes that he was disabled.  Because the ALJ did not find that claimant was disabled, no inquiry into an onset date was required.  *Nix v. Barnhart*, 160 Fed.Appx. 393, 397 n. 14 (5th Cir. 2005).   Thus, this argument lacks merit.

Next, claimant argues that the ALJ erred in assessing his residual functional capacity, citing SSR 96-8p as follows:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

---

[2]In his brief and reply, claimant cites *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984), for the proposition that medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status.  This case is from the 8th Circuit and is not binding on this Court.  Additionally, the Fifth Circuit held otherwise in *Torres* and *Dominguez*.

***

The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.

***

However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work . . .

***

The RFC assessment must address both the remaining exertional and nonexertional capacities of the individual.
Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately . . .

***

In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. ... The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Claimant asserts that the Commissioner's assessment fails to meet the requirements of SSR 96-8p because there is no function-by-function assessment, no rationale or reasoning provided, no discussion of his specific functional abilities, and no discussion of whether he can sit on a sustained basis as required for his prior work as a payroll manager.  [rec. doc. 9, p. 8].  However, the record reflects that the ALJ specifically referenced the RFC assessment prepared by the

10

state agency medical consultant, which satisfies the function-by-function

assessment requirement.  (Tr. 21); *Beck v. Barnhart*, 205 Fed.Appx. 207, 214 (5th

Cir. 2006) (*citing Onishea v. Barnhart*, 116 Fed.Appx. 1, 2 (5th Cir. 2004) (stating

that an RFC assessment based in part on the function-by-function analysis of

claimant's exertional limitations contained in a state examiner's medical report

satisfies the legal standard set forth in *Myers v. Apfel*, 238 F.3d 617, 620-621 (5th

Cir. 2001) and SSR 96-8p).

Additionally, the record reflects that the ALJ relied on the medical records

from Dr. Windham and Anna M. Harrington, P.T., in assessing his RFC.  (Tr. 20-

21).  Further, he relied on claimant's own statements regarding his abilities.  (Tr.

21-22).  It is appropriate to consider the claimant's daily activities when deciding

the claimant's disability status.  *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir.

1995).  As the ALJ's RFC is supported by the evidence, it is entitled to deference.

Claimant's next argument is that the ALJ erred in assessing his credibility.

First, he asserts that the Commissioner improperly failed to consider his long work

history when evaluating his credibility.  In support of this assertion, he cites cases

from courts outside of the Fifth Circuit, which are not binding on this Court.

*Rivera v. Schweiker*, 717 F.2d 719, 725 (2nd Cir. 1983); *Taybron v. Harris*, 667

F.2d 412, 415 n. 6 (3rd Cir. 1981); *Tyson v. Apfel*, 107 F.Supp.2d 1267, 1270 (D. Colo. 2000).

In the Fifth Circuit, the ALJ's finding as to credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). Here, the ALJ found that claimant's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. (Tr. 22). At claimant's last exam with his treating physician, Dr. Windham, claimant had normal gait and normal range of motion of his back. (Tr. 208). EMGs and nerve conduction studies of the left lower extremity were normal. (Tr. 270-71). A myelogram revealed a "very, very small disc herniation at L4-5 on the left," and "very subtle" indentation at the takeoff of the nerve root. (Tr. 299).

Further, claimant testified that he took over-the-counter medication and used an ice pack to relieve his pain. (Tr. 33, 40). He reported that he was offered surgery, but chose not to have it. (Tr. 34-35). It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (the ALJ is not precluded from relying upon the lack of prescribed treatment as an indication of nondisability); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to

seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition).  Further, it is well established that failure to follow prescribed medical treatment precludes an award of benefits.  20 C.F.R. § 416.930(a), (b);  *Johnson v. Sullivan,* 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

Despite the records from claimant's own treating physicians indicating that claimant had a "very, very small" herniation and "very subtle" indentation of the nerve root, the ALJ gave claimant the benefit of the doubt, assigning lesser weight to the state agency consultant's conclusion that claimant was capable of light work.  Instead, he found that claimant had the RFC to perform sedentary work. This RFC assessment is supported by the medical evidence.  Accordingly, the ALJ's opinion is entitled to deference.

Finally, claimant argues that the Commissioner based his denial of benefits on a "flawed and ambiguous" hypothetical question.  [rec. doc. 9, p. 9].  The ALJ asked the vocational expert to assume a claimant with an "exertional capacity to perform sedentary work with the limitations of alternating sit, stand or walk in 30 minutes."  (Tr. 42).  Claimant asserts that the hearing representative "was confused about the meaning of this," and asked a followup question: "You don't believe that an individual would have to stay at the workstation more than 30 minutes or do you think they could continue to work in a standing and walking position?"

13

(Tr. 42).  In response, the VE answered, "Well, *having previously had this kind of hypothet*, what the judge is saying is that after 30 minutes they have to kind of get up, stretch, and then can resume work."  (emphasis added).  (Tr. 42).  As the VE expressly stated that he was familiar with this type of hypothetical, the Court does not find this question to be "flawed and ambiguous."  In any event, such "error" is harmless.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required; the court will not vacate a judgment unless the substantial rights of a party have been affected).

Additionally, claimant argues that the Commissioner failed to address the conflict between the VE's testimony and Dr. Thomas' opinion of his functional abilities due to his pain.  (Tr. 10).  However, it is well established that "the ALJ has *sole* responsibility for determining a claimant's disability status."  (emphasis added).  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).  Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir.1991). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *See Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir.1991);

14

*James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986).  As the ALJ's determination as to pain is supported by the evidence, it is entitled to deference.[3]  *Id.*

Finally, the report by Dr. Thomas on which claimant relies is dated January 7, 2009 and does not purport to relate to claimant's condition on December 31, 2005, claimant's DLI.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL**

---

[3]In the reply, claimant raises the application of the "*Chenery Doctrine,*" cited in *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943).  This is not responsive to defendant's brief, and will not be considered by the Court. [rec. doc. 6, Social Security Scheduling Order, ¶ 4].

**CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed March 12, 2012, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE